**J. Ashlee Albies**, OSB No. 051846
Email: ashlee@albiesstark.com
**Maya Rinta**, OSB No. 195058
Email: maya@albiesstark.com
Albies & Stark LLC
1 SW Columbia St., Suite 1850
Portland, Oregon 97204
Telephone: (503) 308-4770
Facsimile: (503) 427-9292

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **JILLIAN ROBINSON, an individual,**<br><br>        Plaintiff,<br>vs.<br><br>**WASHINGTON COUNTY and CARL SWITZER,**<br><br>        Defendants. | CASE NO.:<br><br>**COMPLAINT**<br><br>(Breach of Contract; Intentional Interference with Economic Relations; Intentional Infliction of Emotional Distress; ORS § 659A.403 – Violation of Oregon's Public Accommodation Act<br>42 U.S.C. § 1983 – Violations of First Amendment – Retaliation)<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Plaintiff Jillian Robinson brings this case against Washington County and Carl Switzer for engaging in discriminatory contracting practices, denying her full and equal public accommodations, and unlawfully interfering with her contract and economic relations because she is a transgender woman; and for retaliating against Ms. Robinson in violation of her First Amendment rights. Plaintiff brings this action under Oregon law as well as 42 U.S.C. § 1983,

and the Fourteenth Amendment to the United States Constitution which grants individuals the right to sue government employees and others acting under color of state law for civil rights violations. Plaintiff seeks monetary damages to redress the constitutional and other violations that result from Defendants' unlawful conduct.

## PARTIES, JURISDICTION & VENUE

2. Plaintiff Jillian Robinson ("Robinson") is, and at all material times was, a resident of the State of Oregon.

3. Washington County ("The County") is a municipal corporation, a local governmental entity with taxing authority, located in Oregon. The County owns municipal properties leased for commercial or industrial uses.

4. Carl Switzer is Facilities and Parks Superintendent for the County, an individual, a resident of Oregon, and is sued in his individual capacity.

5. This Court has subject matter jurisdiction over Plaintiff's claims of violation of federal constitutional rights pursuant to 28 U.S.C. §§ 1331(a) and 1343 because the causes of action arise under 42 U.S.C. § 1983.

6. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Oregon and because Defendants are subject to personal jurisdiction in the District of Oregon.

## FACTUAL ALLEGATIONS

7. Plaintiff Jillian Robinson is a proud parent, U.S. Navy veteran, transgender woman, and owner of Robinson Family Lake House, formerly located at Hagg Lake in Gaston, Oregon in Washington County.

8. In April 2018, Ms. Robinson purchased the business at Hagg Lake and in approximately June 2018, she entered into a contract with Washington County whereby she

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA STREET, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

would operate her business, Robinson Family Lake House, which provided concessions, boat rentals, catering, bait and tackle sales, and free life jackets to members of the public. The contract also allowed Ms. Robinson to reside in an RV at a ramp adjacent to the business, which she did. Around this time, Ms. Robinson also had a mailbox at the Ranger Station, operated by the County Parks Department, which she regularly used.

9. Ms. Robinson liquidated her life's savings and put it into purchasing and running the business. In approximately May 2019, the County renewed Ms. Robinson's contract, with the term ending in May 2020.

10. The Robinson Family Lake house was a family friendly and community-centered business. Ms. Robinson's goal was to provide a safe and welcoming space for families and friends to create happy memories together, and to foster a community of inclusiveness.

11. For approximately a year, Ms. Robinson regularly interacted with Defendant Carl Switzer, Parks Superintendent for the County. Defendant Switzer was courteous and friendly, often spoke of Ms. Robinson as "part of the family," assured her he would help expand her business at Hagg Lake, and represented that her contract with the County would be renewed after May 2020 because Washington County wanted her at Hagg Lake for the long-term.

12. In June 2019, Ms. Robinson came out as a transgender woman and requested people use her new legal name, Jillian Robinson.

13. After Ms. Robinson came out as a transgender woman, Defendant Switzer's behavior towards her changed and he began to subject her to harassment and discrimination on a continuing and regular basis for months. For example, he ignored Ms. Robinson's request to change her name and pronouns in the County contract, repeatedly misgendered her despite numerous corrections, used her former name (also known as a "dead name") to address her despite numerous corrections, and began directing his subordinates to remove County life

jackets from her business premises despite a yearlong practice of sharing life jackets with the business to offer members of the public.

14.     In August 2019, Ms. Robinson flew a Black Lives Matter flag outside of her business to ensure an inclusive and welcoming environment, especially for Black people, who have long been discriminated against in Washington County, pictured here:



15.     Defendant Switzer directed Ms. Robinson to take down the Black Lives Matter flag and came to her business in person demanding she take it down, elevating his voice and escalating the situation in front of Ms. Robinson's customers. When Ms. Robinson protested and pointed out she flew other flags, Defendant Switzer directed her to take down all the flags except the Oregon or United States flag. Ms. Robinson reported the incident to the County

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA STREET, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

Commissioners' Office, who later assured her she could indeed fly the Black Lives Matter flag and no further action would be taken.

16.     Upon information and belief, in approximately September 2019, Defendant Switzer demanded Washington County cancel Ms. Robinson's contract.

17.     Soon after and on a continuing basis, Defendant Switzer subjected Ms. Robinson to escalated harassment and discrimination. For example, he continued to misgender her and use her dead name, she was denied access to the Ranger Station, even though other people could still enter the station, and her mail was held from her for weeks at a time. Upon information and belief, Defendant Switzer directed Park Rangers to stop patronizing Ms. Robinson's business.

18.     Upon information and belief, other Washington County employees discriminated against Ms. Robinson because of her transgender status.

19.     Due to Defendants' conduct, Ms. Robinson no longer felt safe around Defendant Switzer and decided not to let him onto her business property where she worked and lived with her son. She requested Defendant Switzer notify her in advance when he would visit her business property.

20.     On or around October 1, 2019, Defendant Switzer and a Park Ranger came to Ms. Robinson's home and business to check the electrical meter. Ms. Robinson welcomed the Park Ranger to check the meter, as that Park Ranger had regularly been the only one to check the meter every month. Ms. Robinson told Defendant Switzer he was not welcome to come beyond the gate and onto her property. Defendant Switzer told her he could "do as [he] want[s]" and pushed Ms. Robinson with his body. A third party nearby intervened and asked Defendant Switzer to leave as Ms. Robinson had requested. Ms. Robinson called the County Commissioner's Office and later the Washington County Sheriff's Office to report the incident.

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA STREET, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

21. A few hours later on October 1, 2019, the Washington County Sheriff served Ms. Robinson with a notice that her contract had been terminated, stating she was to cease all business operations and that she could no longer reside on the property. Ms. Robinson was shocked: she had seven months remaining on the business contract and no prior notice that the County was even considering terminating the contract—in fact, the County had approved an event at the Lake House for October 31, 2019, and had just approved a liquor license. The County stated its decision to terminate Ms. Robinson's contract was a "no-fault termination."

22. On or around October 2, 2019, Ms. Robinson reported the incident to the County Ethics Hotline, believing Mr. Switzer's conduct and the County's decision to terminate her contract was a result of discrimination and retaliation. Ms. Robinson also testified two times at County Commission meetings, relaying that she believed Defendants' actions were a result of discrimination and retaliation.

23. After Ms. Robinson's complaints, the County Human Resources department began investigating the matter.

24. Despite the ongoing investigation into Ms. Robinson's complaints that her contract was unlawfully terminated and she was being discriminated against, on November 1, 2019, the County notified Ms. Robinson that the termination of the contract was effective and demanded she permanently cease operations and services, and that her camping privileges were revoked.

25. On November 15, 2019, the County notified Ms. Robinson that they were transferring the matter to a third party for further investigation. Despite the ongoing investigation, the County refused to permit business operations and continued to demand Ms. Robison remove her business assets and vacate the property.

/ / /

/ / /

26. On November 19, 2019, Ms. Robinson through counsel sent a Tort Claim Notice to Washington County, demanding the county suspend its decision to revoke Ms. Robinson's contract and notifying the County of her intention to pursue her legal rights.

27. The County hired an outside attorney with a conflict of interest to conduct an "independent investigation." That investigation relied on irrelevant and unsubstantiated information to support the County's pretextual claims that Ms. Robinson's conduct was a justified basis for the contract termination.

28. Ms. Robinson has suffered significant severe economic loss based on Defendants' conduct and their targeting of her business including lost revenue, significant out of pocket costs, and lost business opportunity.

29. Defendants' conduct was reckless or callously indifferent to the federally protected rights of Plaintiff, and/or motivated by evil intent.

## FIRST CLAIM FOR RELIEF
### Breach of Contract – Breach of the Covenant of Good Faith and Fair Dealing
### Against Defendant Washington County

30. Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

**Count one: Breach of the Covenant of Good Faith and Fair Dealing**

31. Defendant Washington County breached the covenant and duty of good faith and fair dealing when it exercised discretion to terminate the contract based on Plaintiff's gender identity and in retaliation for her flying the Black Lives Matter flag. Defendant's exercise of discretion undermined the objectively reasonable expectation of the parties and injured Plaintiff's right to receive the fruits of the contract.

**Count two: Breach of the Non-Discrimination Contract Clause**

32. Defendant Washington County violated its contract with Plaintiff, at paragraph 10, which states "Nondiscrimination. No person shall be denied or subjected to discrimination in

receipt of the benefits of any services or activities made possible by or resulting from this contract on the grounds of race, color, religion, gender, sexual orientation, national origin, disability, age, or marital status. Any violation of this provision shall be considered a material defect and shall be grounds for cancellation, termination or suspension in whole or in part by the County" when it terminated the contract based on Plaintiff's gender identity and in retaliation for her flying the Black Lives Matter flag.

### Count three: Breach of County Policies

33. Defendant Washington County violated its contract with Plaintiff, at paragraph 23, which states "Nondiscrimination. No person shall be denied or subjected to discrimination in receipt of the benefits of any services or activities made possible by or resulting from this contract on the grounds of race, color, religion, gender, sexual orientation, national origin, disability, age, or marital status. Any violation of this provision shall be considered a material defect and shall be grounds for cancellation, termination or suspension in whole or in part by the County" when it terminated the contract based on Plaintiff's gender identity and in retaliation for her flying the Black Lives Matter flag.

34. As a direct and proximate result of Defendant's conduct, Plaintiff was unable to continue her normal business operations, was forced to find another residence, and otherwise did not receive the benefit of the bargain under the contract. She has suffered financial loss and missed business opportunities in the amount to be determined at trial.

35. Pursuant to ORS §§ 20.107 and 20.082, Plaintiff is entitled to recover reasonable attorney fees, expert costs, costs and disbursements.

### SECOND CLAIM FOR RELIEF
### Intentional Interference with Economic Relations
### Against All Defendants

36. Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA STREET, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

37. As described above, Plaintiff and Washington County were parties to a business contract which also provided Plaintiff a place to reside.

38. Defendant Switzer intentionally interfered with Plaintiff's business relationship by encouraging the County to cancel its contract with Plaintiff for an unlawful and improper purpose. As a result of Defendant Switzer's conduct, the County improperly terminated Plaintiff's contract.

39. As a direct and proximate result of Defendant's conduct, Plaintiff was unable to continue her normal business operations, was forced to find another residence, and suffered financial loss and missed business opportunities in the amount to be determined by a jury.

### THIRD CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### Against All Defendants

40. Plaintiffs incorporate the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

41. Defendant Switzer intended to inflict severe emotional distress on the Plaintiff by harassing her based on her gender identity and based on her expressive conduct by mis-gendering her, using her dead name, directing others not to patronize her business, berating her in front of her customers, physically assaulting her, and exercising his influence to encourage the County to cancel her contract.

42. Defendant Washington County intended to inflict severe emotional distress on Plaintiff by allowing its employees to harass Plaintiff, and by cancelling her contract in bad faith because she is transgender and based on her expressive conduct.

43. Defendants knew that such emotional distress was substantially certain to result from their above-described conduct. Defendants' conduct was outrageous in the extreme and exceeded the bounds of socially tolerable conduct.

/ / /

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA STREET, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

## FOURTH CLAIM FOR RELIEF
### ORS § 659A.403 – Violation of Oregon's Public Accommodation Act
### Against Defendant Washington County

44. Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

45. Defendant Washington County provides services as defined under ORS § 659A.400 (1)(c) and is subject to the prohibition on discrimination in public accommodations under ORS § 659A.403.

46. Defendant discriminated against Plaintiff in failing to provide a service based on her gender identity or in retaliation for her opposition to race discrimination.

47. As a result of the above-described conduct, Defendant caused Plaintiff to suffer emotional distress, economic loss, discomfort, frustration, and humiliation in an amount to be determined by a jury.

48. Plaintiff is entitled to reasonable attorney fees pursuant to ORS § 659A.885 and ORS § 20.107.

## FIFTH CLAIM FOR RELIEF
### (First Amendment Retaliation -- 42 U.S.C. § 1983
### Against Switzer)

49. Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

50. Plaintiff engaged in protected expressive conduct when she waved the Black Lives Matter flag, as well as when she filed complaints and petitioned the County to address her claims that it unlawfully terminated her contract.

51. Defendant Switzer unlawfully retaliated against Plaintiff in violation of the First Amendment when he encouraged the County to terminate its contract with Plaintiff in response to her expressive and protected conduct.

/ / /

52. As a direct and proximate result of Defendant Switzer's conduct, Plaintiff has been subjected to pain and suffering, humiliation, and impairment to her reputation, and is entitled to damages in an amount to be decided by the jury.

53. As a direct and proximate result of Defendant Switzer's conduct, Plaintiff has been unable to continue her normal business operations, did not receive the benefit of the bargain under the lease contract and has suffered financial loss, and missed business opportunities.

54. Plaintiff is entitled to an award of punitive damages based on Defendant Switzer's conduct.

55. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable attorney fees, and costs.

WHEREFORE, Plaintiff prays for judgment from Defendants as follows:

(a) Damages including economic losses and emotional harm caused by Defendants, in amounts to be decided by the jury;

(b) An award of punitive damages against all Defendants in amounts to be decided by the jury;

(b) Reasonable attorney fees and costs in an amount to be decided by the Court after trial;

(c) Pre and post judgment interest in accordance with law; and

(d) Any other equitable relief this Court may determine to be fair and just.

DATED: June 19, 2020.

                                               *s/ J. Ashlee Albies*
J. Ashlee Albies, OSB No. 051846
ashlee@albiesstark.com
Maya Rinta, OSB No. 195058
maya@albiesstark.com

*Attorneys for Plaintiff*